Exhibit "A"

2013-15094

# SUMMONS
## (CITACION JUDICIAL)

SUM-100

COPY TO: CITY ATTORNEY ✓

RISK MANAGEMENT

DATE 12/18/2013

DCC NAME David Vanez

RECEIVED BY: MAIL

OTC

CID

DEPT NAME

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

13 DEC 11 PM 4:00

CLERK SUPERIOR COURT
SAN DIEGO COUNTY, CA

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
CITY OF SAN DIEGO; AND DOES 1-50, INCLUSIVE

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
ARCHITECTUREART LLC

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Superior Court of California, County of San Diego<br>330 West Broadway<br>San Diego, CA 92101 | CASE NUMBER:<br>*(Número del Caso):*<br>**37-2013-00079418-CU-CR-CTL** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Vincent J. Bartolotta, Jr. (SBN 055139) / Karen R. Frostrom (SBN 207044) / Jarrett S. Charo (SBN 224001)
Thorsnes Bartolotta McGuire LLP, 2550 Fifth Ave, 11th Floor, San Diego, CA 92103  Phone (619) 236-9363 / Fax (619) 236-9653

| | | | |
|---|---|---|---|
| DATE:<br>*(Fecha)*  DEC 12 2013 | Clerk, by<br>*(Secretario)*  L. Pineda | , Deputy<br>*(Adjunto)* | |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* City of San Diego

   under: ☐ CCP 416.10 (corporation)            ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☒ other *(specify):* Business entity unknown

4. ☒ by personal delivery on *(date):*

Page 1 of 1

RECEIVED CLERK'S OFFICE
SAN DIEGO, CALIF.
DEC 18 AM 10:26

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov<br>Westlaw Doc & Form Builder™ |

1  VINCENT J. BARTOLOTTA, JR., ESQ. (SBN 055139)
   KAREN R. FROSTROM, ESQ. (SBN 207044)
2  JARRETT S. CHARO, ESQ. (SBN 224001)
   THORSNES BARTOLOTTA McGUIRE LLP
3  2550 Fifth Avenue, 11th Floor
   San Diego, California 92103
4  Tel: (619) 236-9363 Fax: (619) 236-9653

5  Attorneys for Plaintiff ArchitectureArt LLC

6

7

8              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9              **COUNTY OF SAN DIEGO, CENTRAL DISTRICT**

10

11  ARCHITECTUREART LLC                Case No.: **37-2013-00079418-CU-CR-CTL**

12         Plaintiff,                  **COMPLAINT**

13    v.                               **Jury Trial Demanded**

14  CITY OF SAN DIEGO; AND DOES 1-50,
    INCLUSIVE,
15
           Defendants.
16

17         ArchitectureArt ("Plaintiff"), a limited liability company, is informed, believes, and thereon

18  alleges against the City of San Diego, and DOES 1-50 Inclusive, as follows:

19                                     **I.**

20                            **INTRODUCTION**

21         1.     This Complaint is limited to alleging violations of Plaintiff's rights under the

22  California Constitution and under California State law only.  All references to violations of

23  Plaintiff's rights, the constitution, and the law are references to violations of Plaintiff's rights under

24  the California Constitution and California State law and do not refer to any violations under the

25  Federal Constitution or Federal law.

26         2.     This Complaint arises from the unfair, unreasonable, and unconstitutional manner in

27  which defendant, the City of San Diego ("the City"), regulates the forum and content of outdoor

28  advertising and graphic messages by selectively enforcing its Sign Ordinance to prefer certain

                                        1

THORSNES BARTOLOTTA McGUIRE LLP
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363
FAX (619) 236-9653

1   speakers and certain content over other similarly situated speakers and content. The City's sign

2   regulations and ordinances are unfairly applied to favor some parties over others, typically those

3   parties who have connections with or other influence over the City and its officials. The City

4   impermissibly allows its agents unbridled discretion to implement and maintain this unconstitutional

5   scheme of favoring one speaker over another similarly situated speaker.

6        3.     The City selectively applied to Plaintiff's Murals an interpretation of the City's Sign

7   Ordinance that had the effect of preventing Plaintiff from conducting its business in San Diego,

8   while the City simultaneously allowed others to engage in the identical conduct and artistic

9   expression with impunity. As a result, Plaintiff's business contracts were negatively affected,

10  resulting in significant monetary damages, and potential risk of litigation.

## II.

## PARTIES AND JURISDICTION

13       4.     Plaintiff is a California limited liability company which conducts its business in San

14  Diego, California.

15       5.     Defendant is a political subdivision of the State of California located in the County of

16  San Diego, and is a municipal corporation that exists under the laws of the State of California.

17       6.     All actions giving rise to this action and Complaint occurred in San Diego County.

18       7.     Does 1 through 50 are fictitious Defendants meant to represent the officers, directors,

19  franchisees, shareholders, founders, owners, operators, agents, servants, employees, representatives,

20  and/or independent contractors of Defendant, or other individuals or entities who were involved in

21  the conduct that gives rise to this Complaint, but whose precise identities are presently unknown to

22  Plaintiff. As the true identities of any such individuals are identified, Plaintiff will amend the

23  Complaint to include them. Any subsequent reference to "Defendant" or "the City" is expressly

24  intended to include all Doe Defendants.

25       8.     The damages sought by Plaintiff are well in excess of this Court's jurisdictional

26  threshold amount.

27       9.     The claims asserted in this Complaint arise out of acts, transactions, and conduct that

28  occurred within the County of San Diego. Therefore this action is properly venued in the Superior

THORSNES BARTOLOTTA MCGUIRE LLP
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363
FAX (619) 236-9653

1064064v1

Complaint

1  Court for the County of San Diego.

2  ### III.

3  ### FACTUAL ALLEGATIONS

4  **A.**   **The Nature of Plaintiff's Business**

5      10.   Plaintiff is, and at all times relevant was, a small outdoor mural painting company

6  conducting its business in San Diego.  Plaintiff chose San Diego as its home for its reputation as a

7  cradle of American outdoor mural art.  Plaintiff's mural signs are located throughout San Diego in

8  commercial zones on private property leased by Plaintiff, for the purpose of offering to the public its

9  services in providing hand-painted works of art.  Plaintiff's leases are limited solely to occupation of

10  the wall surface of such buildings for the purpose of painting murals for Plaintiff's clientele.

11      11.   Plaintiff makes its wall "canvases" available for all types of artistic expression,

12  including public interest, religious, political and commercial messages, with its goal being that of

13  engaging the public in the free marketplace of art, thought, and ideas.

14      12.   Plaintiff's leased wall mural spaces are made available to local and national

15  advertisers on an "all comers" basis in a fashion similar to newspaper, magazine, and broadcast

16  advertising.  The messages on Plaintiff's murals change periodically, and thus the murals are a

17  forum for communication and the expression of ideas, which is protected by the right to liberty of

18  speech guaranteed in the California Constitution.

19      13.   Plaintiff's owner and staff are highly skilled, degreed, and formally trained

20  professional fine artists.  Many of Plaintiff's artists have sold their own paintings and sculptures, and

21  have had their work shown in galleries from New York to Vienna.  Plaintiff founded its company to

22  create a haven for fine artists to make their living, while preserving a near-extinct and endangered art

23  form dating to the Renaissance.  The technique Plaintiff employs in its art is in fact identical to that

24  utilized by Michelangelo when painting the Sistine Chapel.  The murals these artists create are

25  beautifully hand-painted, larger-than-life displays of art.  Whether the message on the mural itself is

26  commercial or non-commercial, the methods in which Plaintiff's murals are painted are inherently

27  artistic.  Although some of the murals Plaintiff paints for its advertising clientele are commercial in

28  nature, Plaintiff adapts the content and images provided by these clients to paint overwhelmingly

THORSNES BARTOLOTTA MCGUIRE LLP
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363
FAX (619) 236-9653

3

Complaint

1  remarkable murals, the adaptation of which is a form of Plaintiff's own artistic expression.



Plaintiff's work of art upon 861 6th Avenue, San Diego - 2013



Plaintiff's work of art upon 615 8th Avenue, San Diego - 2012

THORSNES BARTOLOTTA McGUIRE LLP
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363
FAX (619) 236-9653

4

1064064v1                Complaint

1
2
3
4
5
6
7
8
9
10
11
12
13
14



**Plaintiff with Mural Study in front of large-scale adaption**

15
16
17
18
19
20
21
22
23
24
25
26
27



**San Diego Earth Day Public Service Mural designed and funded by Plaintiff.**

28

THORSNES BARTOLOTTA McGUIRE LLP
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363
FAX (619) 236-9653

5

Complaint

14.     Article 2, Division 12 of the San Diego Municipal Code (the "Sign Ordinance") regulates the installation and maintenance of all signs within the City limits.  The Sign Ordinance generally permits numerous types of signs within the City, so long as the messages contained therein are public interest messages or "on-premises" messages.  San Diego Mun. Code, §142.1210, subd. (a)(1).  On-premises messages (also called "on-site" messages) are those that identify or advertise an establishment, person, activity, goods, products, or services located on the premises where the sign is installed.  *Id.* at subd. (a)(1)(A).  On-site signs are almost always used exclusively for permanent commercial messages, and are generally not available for use by the public.  Therefore, these signs are not typically considered a forum for the expression of ideas.

## C.     Nature of Content versus Character of Structure Carrying the Message

15.     It is important to note the distinction between the nature of a display's content ("on-premises" versus "off-premises") and the character of the structure carrying that message (a free-standing billboard versus a mural integral with a wall.)  "Off-premises" (also called "off-site") advertising is any message which directs attention to a business or product not located on the same premises as the display itself.  The city banned "off-site advertising" in the 1980s in an effort to eliminate the billboard structures which have traditionally carried off-site messages.  At the time, the term "billboard" was synonymous with "off-site advertising."

## D.     The City Creates Separate Forum of Expression and Exempts It from Regulation

16.     While on one hand banning billboards, the City concurrently established an entirely separate forum of outdoor communication: the "painted graphic" or "mural" (herein called "Mural").  Unlike every other type of outdoor display regulated by the City, San Diego chose to wholly exempt Murals from its Sign Ordinance.

17.     Murals are not considered "signs" if meeting certain definitional standards and, as such, require no sign permit or any other type of building permit.  Anyone can grab a paintbrush and, with the property owner's permission, begin painting away.  Indeed, a casual drive through San Diego reveals just that.  This lack of regulation has resulted in a city-wide patchwork of outdoor

THORSNES BARTOLOTTA McGUIRE LLP
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363
FAX (619) 236-9653

6

Complaint

imagery – ranging from bold graffiti artwork to all four sides of buildings lavishly covered in multicolored designs – in varying degrees of artisan skill.

18.     All of these San Diego Murals - estimated to be in excess of 1,000 - convey messages through the use of text and/or other graphics.  There are no size restrictions, no zoning restrictions, no height restrictions, no time restrictions, and no spacing restrictions governing Murals.

**E.      The City Grants Numerous Exceptions to its Sign Ordinance for Favored Speakers**

19.     Despite the City's general ban on off-site signs and messages, the City has granted numerous exceptions for certain speakers, and for favored content, even when the signs containing such messages are in blatant violation of the Sign Ordinance.  The City unfairly applies the Sign Ordinance to favor some parties over others, typically those parties who have connections with or influence over City officials.  Specifically, the City has unevenly, arbitrarily, and illegally allowed certain speakers to post off-site signage while denying other similarly situated speakers the very same rights.  The City has also allowed certain speakers to post on-site commercial signage without requiring permits.

20.     Without limitation and among others, examples of the City's discriminatory and unjustified exceptions are best illustrated by the City's selective enforcement of its Sign Ordinance around the time of the annual San Diego Comic-Con International Convention ("Comic-Con").  Comic-Con, a private-sector, non-profit organization, is by far the city's largest and most profitable convention, generating upwards of $200 million annually in economic impact for San Diego.  For weeks leading up to the convention, and for a period afterwards, the City permits Comic-Con to post massive signs that contain off-site commercial messages that clearly and substantively violate the Sign Ordinance, all without any citation or penalty whatsoever.

21.     These Comic-Con signs are not affixed to the Convention Center where the Comic-Con Convention takes place.  The signage in question is overwhelmingly off-site, commercial advertisements sold by Comic-Con itself to advertisers desirous of targeting the attendees of Comic-Con, and posted upon various private and City-owned properties where the convention is *not* taking place.  Comic-Con in essence takes on the role of an outdoor advertising operator, selling advertising

THORSNES BARTOLOTTA McGUIRE LLP
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363
FAX (619) 236-9653

7

Complaint

space, overseeing the installation of the displays, and collecting the revenues for the protected right the City tacitly grants it to profit through its sanctioned violation of the Sign Ordinance.

**F.      Plaintiff  Sought to Understand how Comic-Con Signage is Permitted**

22.      Beginning in 2010, Plaintiff began to research how it, too, might be able to engage in the type of artistic expression and conduct so lavishly displayed in San Diego by speakers such as Comic-Con and the City.  Plaintiff observed hundreds of off-site advertisements in blatant violation of the City's Sign Ordinance displayed on the exterior of buildings in San Diego during Comic-Con. Nearly a hundred off-site commercial advertisements containing cumulatively thousands of words, numbers, commercial text, advertising symbols, trademarks and copyrighted imagery, were erected on buildings and structures in the City.  These signs took the form of massive, pre-printed (as opposed to hand-painted) "Supergraphic" signs, banners, posters, inflatables, and even structures built in the public right-of-way plastered with off-site commercial advertisements (*i.e.* messages that advertised and referenced goods, products, services and activities that were ***not*** available on the premises on which the signs were installed.) Though these signs violated the Sign Ordinance's ban on off-site advertisements, Comic-Con advertisers were not fined, cited, or sued when this signage was erected.



San Diego Omni Hotel - 2010

THORSNES BARTOLOTTA MCGUIRE LLP
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363
FAX (619) 236-9653

1064064v1          Complaint

THORSNES BARTOLOTTA McGUIRE LLP
2550 Fifth Avenue, 11th Floor
San Diego, California 92103
(619) 236-9363
FAX (619) 236-9653



San Diego Hard Rock Hotel - 2011



San Diego Gaslamp Square Park - 2012

9

1064064v1          Complaint

23.     It was this gross departure from the City's purported "ban" on off-site signs that motivated Plaintiff to inquire how such commercial advertising was being permitted by the City. Plaintiff made nine separate attempts over the course of two years to petition the City as to how Comic-Con's signs were allowed despite the seeming contradiction with the Sign Ordinance, and how Plaintiff might post similar commercial advertisements.  In each case, the City advised Plaintiff that the Comic-Con advertisements violated the City's Sign Ordinance and were not permitted. Plaintiff was told that there was no process in place to obtain permits for such signs, and that the reason the City had not enforced or applied its Sign Ordinance against Comic-Con is that *"Comic-Con makes so much money for San Diego – it lets Comic-Con do whatever it wants."*

24.     The City further affirmed that the Comic-Con signs could not conceivably be classified as "on-site" signs in compliance with the Sign Ordinance because the signs were not affixed to the San Diego Convention Center where the Comic-Con Convention takes place.  Rather, they were placed on the exterior of numerous hotels, restaurants, buildings, and structures and contained messages identifying and advertising activities, goods, products, and services that ***were not located on the premises where the sign was installed***.

25.     As but just one example, for many years during Comic-Con, the San Diego Hard Rock Hotel is plastered with massive movie advertising banners, posters, and "building wraps." According to the City's Sign Ordinance, such signage could only be considered "on-site" if a movie theater existed on the premises showing the advertised movie.  The Hard Rock Hotel had no movie theater but the City allowed this signage.

## G.    The City Advised Plaintiff that Painting Murals with Off-Site Content Would not Violate the Sign Ordinance.

26.     When Plaintiff asked the City how it could legally post outdoor commercial off-site signs (similar to the ones that Comic-Con erected), the City informed Plaintiff that there was no mechanism by which a member of the public could erect similar signs.  However, in the context of this inquiry, the City advised Plaintiff that it could ***paint*** Murals containing advertising content, because Murals were not considered "signs" for the purpose of the Sign Ordnance, and did not require permits.  Fortunately for Plaintiff, the painting of outdoor Murals was its precise business

THORSNES BARTOLOTTA MCGUIRE LLP
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363
FAX (619) 236-9653

10

THORSNES BARTOLOTTA MCGUIRE LLP
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363
FAX (619) 236-9653

1   and expertise.

2       27.    The City's direction to Plaintiff to paint commercial Murals was in reference to

3   Section 142.1210(a)(3) of the City's Sign Ordinance ("Mural Exemption") which exempts certain

4   painted wall Murals from the Sign Ordinance's general ban:

5                       *Painted graphics that are murals*, mosaics, or any type of graphic art

6                       that are *painted on a wall* or fence and *do not contain copy,*

7                       *advertising symbols, lettering, trademarks, or other references to the*

8                       *premises, products, or services that are provided on the premises*

9                       *where the graphics are located or any other premises are not signs*

10                      *for the purposes of these regulations*.  When painted graphics are

11                      installed on other than a wall or fence or contain copy, advertising

12                      symbols, lettering, trademarks, or other references to the premises,

13                      products, or services, only the actual copy area is considered sign area

14                      and shall comply with these regulations.

15  San Diego Mun. Code, §142.1210, subd. (a)(3).

16      28.    In other words, according to the City, the Sign Ordinance allows *painted Murals* to

17  contain copy, advertising symbols, lettering, and trademarks, so long as these descriptors *do not*

18  *refer to the premises, products, or services provided on the premises nor refer to other premises*.

19  Thus, under the City's interpretation of this code section that the City provided to Plaintiff, *painted*

20  *Murals* that contain copy, advertising symbols, lettering and trademarks *that refer to products or*

21  *services not contained in the location on which the Mural is painted* (*i.e.* "off-site"), are not

22  considered signs, and are exempt from the Sign Ordinance.

23      29.    Accordingly, despite the City's general ban on off-site signs, the City informed

24  Plaintiff that subdivision (a)(3) allows *off-site* messages without a permit, *so long as they are*

25  *painted* on a wall or fence.  Where painted signs contain copy that refers to the premises on which

26  the sign is situated, or products or services offered on the premises, a permit is required only for that

27  portion of the sign that contains the "*on-site*" copy.

28      30.    The Comic-Con signs referenced above all violate the Sign Ordinance.  Contrary to

11

Complaint

San Diego Municipal Code section 142.1210(a)(1), they contained *off-site* commercial copy because they advertised or referenced goods, products, services, and activities that *were not available on the premises where the signs were installed*. Further, because the Comic-Con signs were not *painted Murals* but rather were composed of pre-printed material affixed to buildings and other structures, the Comic-Con signs did not fall under the City's interpretation of San Diego Municipal Code section 142.1210(a)(3)'s "Mural Exemption" that allows *painted Murals* which advertise off-site goods, products, and services.

**H.    The City Devises a Scheme to Allow Comic-Con to Violate Sign Ordinance**

31.    In or around 2008, Comic-Con began exploring other cities to host its mega-convention, because it had outgrown the San Diego Convention Center. Since Comic-Con would consistently sell all of its tickets in a given year, it had maxed out its gate revenue and began looking for other ways to generate revenue – such as selling advertising. The cities competing for Comic-Con's valuable business (Los Angeles, Las Vegas, etc.) allowed the type of massive off-site displays that San Diego's Sign Ordinance prohibited. If Comic-Con could find a way around the Sign Ordinance, it could enjoy this additional revenue stream. Desperate to accommodate its largest revenue generator and renowned symbol of San Diego, the City conspired with Comic-Con to circumvent the Sign Ordinance, thus allowing Comic-Con to begin posting such revenue-generating, off-site displays, in knowing contravention of its own off-site "ban."

32.    In a transparent attempt to cloak Comic-Con's signs with the protection found in the Mural Exemption, the City began referring to Comic-Con's off-site signs as "Super Murals" and allowed Comic-Con's advertisers to post these signs – even though this term does not appear in (and of course is not defined in) the City's Municipal Code and even though the Comic-Con displays are *pre-printed* (as opposed to painted) and do not remotely meet the definitional standards of a "Mural."

33.    While the City made every effort to allow Comic-Con to post its *pre-printed* off-site signs even though they did not fall within the Mural Exemption, as detailed below, the City took the opposite tact with Plaintiff's Murals – actual, bona fide, hand-painted works of art. The City made every effort to *prohibit* Plaintiff from posting its *hand-painted* off-site Murals even though

THORSNES BARTOLOTTA MCGUIRE LLP
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363
FAX (619) 236-9653

12

Complaint

Plaintiff's Murals fell squarely within the Mural Exemption and in spite of the formal advice the City gave to Plaintiff to proceed in this fashion.

**I.    Plaintiff's Due Diligence**

34.    Plaintiff performed its due diligence prior to establishing its business to ensure that it would be operating within the full scope of the law when painting Mural advertisements in San Diego. The City's numerous statements that Comic-Con signs and "Super Murals" were off-site content approved by the City without permit requirements, coupled with the City's instruction to paint Murals as a legal means of erecting such advertising, confirmed to Plaintiff that any Murals it painted with off-site content did not require permits, and would not violate the Sign Ordinance. The City's statements and conduct set the legal standard as to how off-site advertisements could be erected. Plaintiff relied on the City's standards in investing considerable funds to establish its business pursuant to the City's advice, and observations of the City's actions.

**J.    The City's Pattern of Applying a Double Standard to Plaintiff's Business**

35.    Following the City's advice to pursue off-site advertisements in the form of painted Murals, Plaintiff painted an off-site Mural during the Comic-Con Convention in July 2011. Despite the City's prior encouragement and assurances as to the legality of the Murals, shortly after Plaintiff created its off-site Mural, the City cited Plaintiff's Mural for violating the Sign Ordinance, wholly ignoring the Mural Exemption.

36.    When Plaintiff asked why the Mural was cited, the City contradicted its own code and own formal advice to Plaintiff by stating: "You should have just printed the ad like everyone else, and then removed it right after Comic-Con ended … ." The City made this statement despite the fact that the Mural Exemption specifically requires hand painting, and the Sign Ordinance does not impose any limit on how long a Mural may be displayed. The City explained that Plaintiff's Mural would not have been cited had it been removed sooner (*i.e.* when the Comic-Con advertisers removed their signs).

37.    Given these statements by the City in 2011, the next year, in July 2012, Plaintiff secured advertisers for whom Plaintiff would create off-site signage during the Comic-Con Convention. Plaintiff installed these Murals during the time that other advertisers erected similar

THORSNES BARTOLOTTA MCGUIRE LLP
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363
FAX (619) 236-9653

13

Complaint

1   signage in the neighborhood in preparation for the convention and – given the City's prior

2   representations – planned to remove them at the conclusion of Comic-Con.

3        38.     Between 2012 and 2013 Plaintiff was continuously cited and fined for erecting off-

4   site painted Murals that were similar to the Comic-Con signs and "Super Murals" that the City

5   allowed on private and City-owned property during the convention.  The City's selective citations

6   indicate its favor towards the content and artistic medium of Comic-Con signs over the content and

7   medium chosen by Plaintiff and others similarly situated.  In fact, the City publicly expressed its

8   enjoyment of Comic-Con's pre-printed "Super Murals" calling them "works of art" at the very same

9   time it was issuing citations to Plaintiff for its hand-painted Murals.  The City's conduct put Plaintiff

10  in the untenable position of paying fines for maintaining its Murals, or being forced to destroy them.

11  In each case, Plaintiff responded to the City with specific proof and law demonstrating why the

12  City's citations were in error.  The City's only response to these communications was to continue

13  issuing the same improper citations.  After the City's relentless citations, Plaintiff endeavored to

14  paint Murals with public interest messages and on-site content as expressly allowed by the Sign

15  Ordinance.  San Diego Mun. Code, §142.1210, subd. (a)(1).  Even then, the City continued to issue

16  citations and fines to Plaintiff, and eventually turned Plaintiff over to the City Attorney's Office for

17  prosecution.

18       39.     One particularly egregious example of the City's impermissible censorship of speech

19  is found in the City's allowing a "Pro-San Diego" Mural created by Plaintiff to exist for more than a

20  year; yet when it was painted out and replaced by a "Pro-Los Angeles" Mural, Plaintiff was

21  immediately cited and forced to paint out the words "Los Angeles" where the words "San Diego"

22  had been.

23  **K.    The Circumstances Giving Rise to this Complaint**

24       40.     In April and May of 2013, the City began engaging in a course of conduct designed to

25  put Plaintiff out of business.  Leading up to this point, the City had cited and fined Plaintiff's Murals

26  located at 615 8th Avenue, 861 6th Avenue, and 1001 Garnet Avenue.  Under protest, Plaintiff had

27  removed each such Mural as to eliminate additional costly fines.  Plaintiff was however already

28  contractually bound to produce new Murals for several of its patrons by April and May of 2013.

THORSNES BARTOLOTTA MCGUIRE LLP
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363
FAX (619) 236-9653

14

Complaint

Believing it fully within its legal rights, and pursuant to the express advice given it by the City, Plaintiff proceeded to create new Murals at three City of San Diego addresses: 615 8th Avenue, 1001 Garnet Avenue, and 4656 Park Boulevard. Each of these Murals was "on-site" as each advertised products offered in the location on which the Murals were located. Nonetheless, the City Attorney immediately threatened to file criminal and civil charges against Plaintiff if it failed to bring its Murals "into compliance" by either securing permits, or painting out all commercial advertising contained in the freshly-painted Murals. The City Attorney explained that any portions of the Murals containing "on-site" copy must have that portion of the Mural approved by a permit – though the City consistently allowed Comic-Con and others similarly situated to Plaintiff to post *off-site* signage without any manner of permit, and in spite of the fact that no on-site Mural anywhere in the city has ever been permitted, nor cited for lack of a permit.

41. Nonetheless, Plaintiff followed the City Attorney's instructions and sought to obtain permits for the three new Murals. Plaintiff properly applied for the permits, submitting detailed plans and all necessary documentation to all necessary departments of oversight, and on or around May 16, 2013, the City approved the permits. Plaintiff relied on these permits to continue conducting its business and executing contracts with its clientele.

42. However, shortly thereafter – when Plaintiff visited the City to pay the administrative fees for the permits the City had issued – the City revoked the previously issued permits and approvals, and informed Plaintiff that no further permits would issue. As a result, Plaintiff faced imminent daily fines and litigation if it did not immediately destroy its Murals. Consequently, Plaintiff's business contracts and reputation were negatively affected, resulting in significant monetary damages, and exposing Plaintiff to litigation from its clients.

43. Given the City's actions, it is evident that the City has selectively and unreasonably applied the Sign Ordinance to accommodate the signage of favored speakers such as Comic-Con while simultaneously prohibiting Plaintiff from engaging in the same conduct. The exceptions that the City has made to its off-site sign ban for Comic-Con and its concurrent enforcement of the ban as to Plaintiff, in no way relate to the concerns of aesthetics and traffic safety proffered by San Diego in support of its off-site advertising prohibition. In fact, the Comic-Con "Super Murals," signs,

THORSNES BARTOLOTTA MCGUIRE LLP
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363
FAX (619) 236-9653

15

Complaint

1    inflatables, and illuminated signs that the City allows blatantly offend traditional notions of

2    aesthetics.

3



San Diego Comic-Con 2011 - Marvel Monstergeddon
By PopCultureGeek.com  ★ Favorite  ▢ Comment

2011 6th Avenue, San Diego 2011

19   Moreover, the fact that the City exempts Comic-Con from its Sign Ordinance undercuts any

20   legitimate rationale for which it has adopted such restrictions in its Sign Ordinance; demonstrates

21   that the City has not substantially furthered its goals in adopting such restrictions; and illustrates the

22   City's unfettered or unbridled discretion in derogating therefrom.

23   **L.    The Sign Ordinance and the City's Actions are Fundamentally Unfair, Unreasonable,**

24   **and Violates Plaintiff's Rights**

25        44.    The general provisions of the Sign Ordinance are drafted in a way that prohibit off-

26   site signs and messages.  Yet, the City has allowed Comic-Con to post off-site commercial

27   advertisements in contravention of it, while prohibiting Plaintiff from doing so and moreover,

28   prohibiting Plaintiff from engaging in *on-site* Murals even though such Murals are *explicitly allowed*

THORSNES BARTOLOTTA MCGUIRE LLP
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363
FAX (619) 236-9653

16

*under the Sign Ordinance*.  This contradiction operates to allow the Sign Ordinance to be applied by the City to restrict specific content, forms of expression, or speakers who are less favored by the City than Comic-Con.

45.     Indeed, it appears that the City has interpreted and applied the Sign Ordinance to approve the content of Comic-Con advertisers which promotes entertainment products and services such as movies, television shows, video games, comics and other entertainment.  While, at the same time, interpreted the Sign Ordinance to determine that the content in Plaintiff's Murals, which advertise a variety of consumer goods and services such as sports gear, luxury items, beverages, airlines and others, is illegal.  The City's preferential treatment of advertisements related to entertainment versus the City's disfavored treatment of advertisements promoting consumer goods and services, is a classic unconstitutional content-based distinction.  The City has no legitimate compelling government interest to justify why its preference for content related to commercial entertainment advertisements is legal but that content related to commercial advertisements for consumer goods is not.

46.     Further, despite the commercial advertising aspect to some of Plaintiff's Murals, these Murals are inherently artistic in the method in which they are painted.  Plaintiff's modification of its client's content in fashioning the Mural is a form of Plaintiff's own artistic expression.  The City's actions indicate that the City has determined that Comic-Con's super-graphic or "Super Mural" signs, which predominantly consist of layering and placing pre-printed material over a building surface, are legal.  The City has publicly affirmed that it considers Comic-Con commercial signs "works of art." Yet, the City condemns Plaintiff's commercial content and messages that are constructed by method of hand painting images on a wall.  Here, the City is restricting Plaintiff's speech by impermissibly distinguishing between forms of artistic expression.  Additionally, the City has improperly favored certain speakers such as Comic-Con (who the City views as holding influence over the City) while disfavoring speakers with less perceived influence – such as Plaintiff.

47.     The City's disparate treatment of Plaintiff in no way relates to the concerns of aesthetics or traffic safety that the off-site prohibition in the Sign Ordinance was intended to mitigate.  Further, the City has failed to, and refused to issue citations, or undertake enforcement

THORSNES BARTOLOTTA MCGUIRE LLP
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363
FAX (619) 236-9653

17

Complaint

efforts for purported safety or code violations of the Comic-Con advertisers – including Comic-Con advertisements *located on City property*.  Such self-dealing exemptions by the City call into doubt both the legitimacy of the goals purportedly sought to be accomplished by the Sign Ordinance, and illustrate that the City has failed to further such goals in any meaningful way.

48.     The City does not have any written standard to guide its employees in applying the Sign Ordinance or interpreting whether the Mural Exemption applies in any given case.  This gives unqualified City employees unfettered discretion to arbitrarily and unfairly decide which advertisements are permitted and which are not.  Plaintiff is informed and believes that the City intends to continue unfairly granting only favored speakers the rights or permits to post off-site signs by using the exceptions and arbitrary distinctions found in the Sign Ordinance, by refusing to enforce the Sign Ordinance, or by continuously changing its policies and laws when the need arises.

49.     For no valid reason, the City has refused to provide Plaintiff the same opportunities as other parties to erect virtually identical off-site signage.  For instance, Plaintiff was told by City administrators functioning with unbridled discretion that it would have to comply with permit requirements even though other parties were not required to do so; and then such City administrators arbitrarily and capriciously revoked such permits without any legitimate basis after they were issued. By enforcing its off-site sign ban only against speakers who are less favored than Comic-Con (such as Plaintiff), the City has denied Plaintiff, and its advertising clientele, the fundamental right to free speech and equal protection under California law.

50.     The City acted unreasonably and impermissibly in frequently changing its standards, selectively applying contradicting procedures to Plaintiff, and revoking permit approvals that were lawfully granted to Plaintiff.  This conduct impacted Plaintiff in such a way that it constituted a violation of Plaintiff's substantive due process rights under California law.  The City's revocation of lawfully approved ministerial permits also constituted a taking without just compensation by means of inverse condemnation, and a violation of Plaintiff's procedural due process rights under California law.  Lastly, the City's above-described conduct, and the City's knowledge of the impact it would have on Plaintiff's contractual relationships and business prospects with its clients, demonstrates that the City intentionally interfered with Plaintiff's prospective economic advantage.

THORSNES BARTOLOTTA MCGUIRE LLP
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363
FAX (619) 236-9653

18

# FIRST CAUSE OF ACTION

## (Abrogation of Liberty of Speech in the California Constitution)

51.    Plaintiff refers to and incorporates herein by reference, as fully set forth, each of the other allegations in this Complaint.

52.    By exempting painted Murals from the general restrictions in the Sign Ordinance, the City created a public forum, which pursuant to Article I Section 2 of the California Constitution, cannot be restricted to exclude speech on the basis of content. The City's actions and the Sign Ordinance as applied to Plaintiff; and sections 142.1210(1)(1) and (a)(3) of the Municipal Code on their face, are unconstitutional and deprive Plaintiff and the public of the right to liberty of speech guaranteed by Article I, Section 2 of the California Constitution in that:

(a)    The Sign Ordinance and the Mural Exemption are contradictory to each other and confusing, and do not provide sufficient safeguards to ensure that City inspectors are prohibited from exercising unbridled discretion in determining which Murals and signs constitute on-site speech, and which Murals and signs constitute off-site speech.

(b)    The Sign Ordinance is void for vagueness as the term "or other references to the premises" in the Mural Exception is not sufficiently defined, and the City has refused to provide any guidelines to determine whether a sign or Mural qualifies as on-site content as permitted by the Sign Ordinance, or a prohibited off-site sign, or as a permissible painted Mural with off-site content as permitted by the language of the Mural Exemption.

(c)    The Sign Ordinance, and the City's application thereof, impermissibly distinguishes between sign and Mural messages based on their content and the identity of the speaker. Plaintiff is informed and believes that revocation of Plaintiff's permit approvals was a direct result of the content of the message in the Murals, and due to the fact that the City deemed Plaintiff to have less influence over the City's affairs. No compelling state interest justifies the City's refusal to allow a public forum for commercial advertisements of consumer goods, while the City approves a forum for commercial advertisements that promote the entertainment industry. In fact, no legitimate governmental reason was articulated (or exists) for the City's arbitrary refusal to allow Plaintiff the right to paint off-

19

THORSNES BARTOLOTTA MCGUIRE LLP
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363
FAX (619) 236-9653

site commercial Murals or for the City's revocation of Plaintiff's permits for on-site Murals.

(d)     The Sign Ordinance, and the City's application thereof, impermissibly distinguishes between mediums of artistic expression as well as the identity of the speaker of that expression.

(e)     The Sign Ordinance, facially and as applied, operates as a prior restraint of Plaintiff's liberty to speech because it places unbridled discretion in the hands of City officials and results in censorship.  The Sign Ordinance coupled with the City's unbridled discretion in applying it amounts to a prior restraint of speech because the Sign Ordinance provides no limitation on the time within which the City shall approve or deny an application for such signage, nor provides any certain time table for resolution of citations affecting speech-protected activity in Murals.

53.     Plaintiff is informed and believes that the City denies the above contentions.  Plaintiff seeks and desires a declaration of judicial determination that the City's Sign Ordinance is invalid and unconstitutional as applied to Plaintiff and that sections 142.1210(a)(1) and 142.1210(a)(3) of the Sign Ordinance are invalid and unconstitutional on their face, because they abridge the right to liberty of speech guaranteed by Article I Section 2 of the California Constitution.

54.     An actual and justiciable controversy has arisen and now exists between the parties concerning the constitutionality and legality, application, and enforcement of the City's Sign Ordinance, and judicial declaration is necessary and appropriate at this time so that the parties may ascertain their rights, duties and obligations.

55.     The City's actions have hindered and chilled Plaintiff from exercising its rights to liberty of speech.  Plaintiff faces a credible and imminent threat of City enforcement actions, civil penalties and/or criminal prosecution if Plaintiff proceeds to exercise its state constitutional rights to erect Murals or similar signage on its leased wall spaces.

56.     Plaintiff is informed, believes, and thereon alleges that unless and until restrained by this Court, the City will continue to enforce, and threaten to enforce the Sign Ordinance, or other ordinances, against Plaintiff to prohibit the placement of additional signs on leaseholds already obtained by Plaintiff specifically for the display of Murals.  Plaintiff will be irreparably injured in

THORSNES BARTOLOTTA MCGUIRE LLP
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363
FAX (619) 236-9653

20

Complaint

1    that it will be deprived of constitutional rights guaranteed under the California Constitution, will

2    continue to suffer substantial loss of rents, profits, and goodwill, and may be subjected to a

3    multiplicity of lawsuits.  Permitting the City to arbitrarily enforce the Sign Ordinance will also have

4    a chilling effect on the exercise of Constitutional rights by members of the public.

5          57.    Plaintiff has no adequate remedy at law to prevent or redress this irreparable injury.

6    If Plaintiff is successful in this action, a significant benefit will be conferred on the general public,

7    and Plaintiff is therefore entitled to reasonable attorney's fees.

8          58.    In performing these acts, the City acted under color of statute, ordinance, regulation

9    and policy of the municipality, in a manner outside constitutional authority and contrary to law.

10         59.    As a direct and proximate result of the conduct alleged herein, Plaintiff has suffered

11   substantial lost revenue, lost profits, and goodwill due to its inability to use or sub-lease the wall

12   spaces to advertisers or others, suffered the loss of permits and future permitting rights, and has been

13   damaged in an amount subject to proof at trial.

## SECOND CAUSE OF ACTION

### (Abrogation of Free Commercial Speech under the California Constitution)

16         60.    Plaintiff refers to and incorporates herein by reference, as fully set forth, each of the

17   other allegations in this Complaint.

18         61.    The California Constitution and corresponding state jurisprudence affords no lesser

19   protection of commercial speech over other protected speech.  The City's aforementioned conduct

20   abrogates Plaintiff's rights to commercial speech guaranteed by state jurisprudence and Article I

21   Section 2 of the California Constitution.  Plaintiff is informed and believes, and thereon alleges, that

22   the Sign Ordinance impermissibly distinguishes between commercial and noncommercial speech

23   based on content, without any compelling government interest, and by means that are not narrowly

24   drawn to meet a compelling government interest.

25         62.    Plaintiff seeks and desires a declaration of judicial determination that the City's Sign

26   Ordinance is invalid, unenforceable, and unconstitutional under California jurisprudence and Article

27   I Section 2 of the California Constitution because it abridges the right to liberty of commercial

28   speech.

THORSNES BARTOLOTTA McGUIRE LLP
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363
FAX (619) 236-9653

1064064v1    | Complaint

63.     Plaintiff is informed and believes that the City denies the above contentions.  An actual and justiciable controversy has arisen and now exists between the parties concerning the constitutionality and legality, application, and enforcement of the City's Sign Ordinance and judicial declaration is necessary and appropriate at this time so that the parties may ascertain their rights, duties and obligations.

64.     The City's actions have hindered and chilled Plaintiff from exercising its rights to free commercial speech.  Plaintiff faces a credible and imminent threat of City enforcement actions, civil penalties and/or criminal prosecution if Plaintiff proceeds to exercise its state constitutional rights to erect commercial Murals on its leased wall spaces.

65.     Plaintiff is informed, believes, and thereon alleges that unless and until restrained by this Court, the City will continue to enforce, and threaten to enforce the Sign Ordinance, or other ordinances, against Plaintiff to prohibit the placement of additional Murals on leaseholds already obtained by Plaintiff specifically for the display of Murals.  Plaintiff will be irreparably injured in that it will be deprived of constitutional rights guaranteed under the California Constitution, will continue to suffer substantial loss of rents, profits, and goodwill, and may be subjected to a multiplicity of lawsuits.  Permitting the City to enforce the Sign Ordinance will also have a chilling effect on the exercise of state Constitutional rights by members of the public.

66.     Plaintiff has no adequate remedy at law to prevent or redress this irreparable injury.  If Plaintiff is successful in this action, a significant benefit will be conferred on the general public, and Plaintiff is therefore entitled to reasonable attorney's fees.

67.     In performing these acts, the City acted under color of statute, ordinance, regulation and policy of the municipality, in a manner outside constitutional authority and contrary to law.

68.     As a direct and proximate result of the conduct alleged herein, Plaintiff has suffered substantial lost revenue, lost profits, and goodwill due to its inability to use or sub-lease the wall spaces to advertisers or others, suffered the loss of permits and future permitting rights, and has been damaged in an amount subject to proof at trial.

THORSNES BARTOLOTTA McGUIRE LLP
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363
FAX (619) 236-9653

1064064v1                    Complaint

## THIRD CAUSE OF ACTION

### (Violation of Equal Protection of the Law)

69.     Plaintiff refers to and incorporates herein by reference, as fully set forth, each of the other allegations in this Complaint.

70.     The City's actions violated Plaintiff's rights to equal protection under Article I Section 7 of the California Constitution because, without limitation:

(a)     The City's granting of numerous exceptions to its Sign Ordinance to its favored speakers and favored content while simultaneously prohibiting Plaintiff and others from engaging in similar conduct amounts to disparate and discriminatory treatment of Plaintiff in comparison to other similarly situated parties.

(b)     The Sign Ordinance vests virtually unfettered discretion in City officials to deny applications for such signs.  The City has not provided any written standard to guide City officials in applying its Sign Ordinance.  This allows the City to act with unfettered discretion in choosing when, against whom, and to what content and medium it enforces its Sign Ordinance.

(c)     The Sign Ordinance denies Plaintiff equal protection of the laws in that it deprives Plaintiff of the same speech rights that similar businesses are allowed.

71.     Plaintiff seeks and desires a declaration of judicial determination that the Sign Ordinance and the City's enforcement thereof, at all times was, invalid, unenforceable, and unconstitutional under Article I, Section 7 of the California Constitution.

72.     Plaintiff is informed and believes that the City denies the above contentions.  An actual and justiciable controversy has arisen and now exists between the parties concerning the constitutionality and legality, application, and enforcement of the City's Sign Ordinance, and judicial declaration is necessary and appropriate at this time so that the parties may ascertain their rights, duties and obligations.

73.     Plaintiff faces a credible and imminent threat of City enforcement actions, civil penalties and/or criminal prosecution if Plaintiff proceeds to exercise its state constitutional rights to erect Murals or similar off-site signage on its leased wall spaces.

THORSNES BARTOLOTTA MCGUIRE LLP
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363
FAX (619) 236-9653

23

Complaint

74.     Plaintiff is informed, believes, and thereon alleges that unless and until restrained by this Court, the City will continue to deny Plaintiff's rights to equal protection by unfairly and selectively applying and enforcing the Sign Ordinance against Plaintiff to the effect of prohibiting Plaintiff from placing additional signs on leaseholds already obtained by Plaintiff specifically for the display of Murals.  Plaintiff will be irreparably injured in that it will be deprived of constitutional rights guaranteed under the California Constitution, will continue suffer substantial loss of rents, profits, and goodwill, and may be subjected to a multiplicity of lawsuits.  Plaintiff has no adequate remedy at law to prevent or redress this irreparable injury.  If Plaintiff is successful in this action, a significant benefit will be conferred on the general public, and Plaintiff is therefore entitled to reasonable attorney's fees.

75.     In performing these acts, the City acted under color of statute, ordinance, regulation and policy of the municipality, in a manner outside constitutional authority and contrary to law.

76.     As a direct and proximate result of the conduct alleged herein, Plaintiff has suffered substantial lost revenue, lost profits, and goodwill due to its inability to use or sub-lease the wall spaces to advertisers or others, suffered the loss of permits and future permitting rights, and has been damaged in an amount subject to proof at trial.

## FOURTH CAUSE OF ACTION

### (Inverse Condemnation)

77.     Plaintiff refers to and incorporates herein by reference, as fully set forth, each of the other allegations in this Complaint.

78.     The City's revocation of Plaintiff's permit approvals amounted to a taking by means of inverse condemnation as prohibited in Article I, Section 19 of the California Constitution. Plaintiff filed an application for, and was approved and issued ministerial permits by the City.  When the City rescinded the permits, it wholly prevented Plaintiff from any economical use of its leased wall spaces.  Plaintiff was forbidden to erect its commercial Murals without the permits, and had to destroy its Murals, which negatively affected Plaintiff's existing agreements with its advertising clients.  Plaintiff's entire interest and economic use in the leased wall spaces is for the purpose of painting Mural advertisements.  If the City requires Plaintiff to obtain permits in order to paint

THORSNES BARTOLOTTA MCGUIRE LLP
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363
FAX (619) 236-9653

24

Complaint

1 commercial Mural advertisements, then Plaintiff cannot contract for Mural advertisements without

2 such permits. There is no alternative economic use of Plaintiff's leased wall spaces.

3      79.    The City has in effect condemned Plaintiff's property rights in its leased wall spaces

4 for public use and benefit by interpreting and applying the Sign Ordinance in a manner such as to

5 absolutely preclude the ability to paint commercial Murals. The City's condemnation prevents

6 Plaintiff from any commercially reasonable use of its property interests.

7      80.    As a direct and proximate result of the City's conduct, Plaintiff was deprived of

8 valuable property rights and use of the leased wall spaces, allegedly for the benefit of the public, or

9 in pursuit of the public objectives, without payment of just compensation, or any compensation

10 whatsoever.

11      81.    Plaintiff is informed and believes that the City denies the above contentions. Plaintiff

12 seeks and desires a declaration of judicial determination that the City's revocation of Plaintiff's

13 permits constituted a taking without just compensation and was unconstitutional under Article I,

14 Section 19 of the California Constitution.

15      82.    An actual and justiciable controversy has arisen and now exists between the parties

16 concerning the constitutionality of the City's improper revocation of Plaintiff's permit approvals,

17 and a judicial declaration is necessary and appropriate at this time so that the parties may ascertain

18 their rights, duties and obligations.

19      83.    Plaintiff faces a credible and imminent threat of City enforcement actions, civil

20 penalties and/or criminal prosecution if Plaintiff proceeds to exercise its state constitutional rights to

21 erect Murals or similar signage on its leased wall spaces.

22      84.    Plaintiff is informed, believes, and thereon alleges that unless and until restrained by

23 this Court, the City will continue to unfairly and unreasonably apply the Sign Ordinance, or other

24 ordinances, to Plaintiff in a way that condemns and deprives Plaintiff of the use and value of its

25 property rights in its leased wall spaces. Plaintiff will be irreparably injured in that it will be

26 deprived of property rights guaranteed under the California Constitution, will continue to suffer

27 substantial loss of rents, profits, and goodwill, and may be subjected to a multiplicity of lawsuits.

28 Plaintiff has no adequate remedy at law to prevent or redress this irreparable injury. If Plaintiff is

THORSNES BARTOLOTTA McGUIRE LLP
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363
FAX (619) 236-9653

25

1    successful in this action, a significant benefit will be conferred on the general public, and Plaintiff is

2    therefore entitled to reasonable attorney's fees.

3         85.    In performing these acts, the City acted under color of statute, ordinance, regulation

4    and policy of the municipality, in a manner outside constitutional authority and contrary to law.

5         86.    As a direct and proximate result of the conduct alleged herein, Plaintiff has suffered

6    substantial lost revenue, lost profits, and goodwill due to its inability to use or sub-lease the wall

7    spaces to advertisers or others, suffered the loss of permits and future permitting rights, and has been

8    damaged in an amount subject to proof at trial.

9                              **FIFTH CAUSE OF ACTION**

10                        **(Violation of Substantive Due Process)**

11        87.    Plaintiff refers to and incorporates herein by reference, as fully set forth, each of the

12   other allegations in this Complaint.

13        88.    The City's failure to give lawful permits to Plaintiff violated its rights to substantive

14   due process as protected in Article I, Section 7 of the California Constitution in that:

15             (a)    The City's revocation of Plaintiff's permits, without review and reasonable

16        justification violated Plaintiff's rights to substantive due process.

17             (b)    The City acted unfairly toward Plaintiff when the City arbitrarily and

18        unreasonably created and applied a double standard to Plaintiff in interpreting the content of

19        Plaintiff's Murals. Each time Plaintiff met the City's standards, the City changed them on a

20        whim so as to effectively exclude and prohibit Plaintiff from engaging in legally protected

21        speech.

22             (c)    The City deprived Plaintiff of its substantive due process rights by requiring

23        that Plaintiff endure an administrative permit process for its Murals while entirely

24        exempting other similarly situated speakers from the same administrative permit process.

25        89.    Plaintiff seeks and desires a declaration and judicial determination that the City's

26   misapplication and enforcement of permit requirements for the Sign Ordinance, and revocation of

27   Plaintiff's permit approvals was unconstitutional under the guarantee of due process in Article I,

28   Section 7 of the California Constitution.

THORSNES BARTOLOTTA McGUIRE LLP
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363
FAX (619) 236-9653

26

90. Plaintiff is informed and believes that the City denies the above contentions. An actual and justiciable controversy has arisen and now exists between the parties concerning the constitutionality of the City's conduct and revocation of Plaintiff's permit approvals, and a judicial declaration is necessary and appropriate at this time so that the parties may ascertain their rights, duties and obligations.

91. Plaintiff faces a credible and imminent threat of City enforcement actions, civil penalties and/or criminal prosecution if Plaintiff proceeds to exercise its state constitutional rights to erect Murals or similar signage on its leased wall spaces.

92. Plaintiff is informed, believes, and thereon alleges that unless and until restrained by this Court, the City will continue to deny Plaintiff its permit approvals depriving Plaintiff of its right to due process. Plaintiff will be irreparably injured in that it will be deprived of constitutional rights guaranteed under the California Constitution, and will continue to suffer substantial loss of rents, profits, and goodwill, and may be subjected to a multiplicity of lawsuits. Plaintiff has no adequate remedy at law to prevent or redress this irreparable injury. If Plaintiff is successful in this action, a significant benefit will be conferred on the general public, and Plaintiff is therefore entitled to reasonable attorney's fees.

93. In performing these acts, the City acted under color of statute, ordinance, regulation and policy of the municipality, in a manner outside constitutional authority and contrary to law.

94. As a direct and proximate result of the conduct alleged herein, Plaintiff has suffered substantial lost revenue, lost profits, and goodwill due to its inability to use or sub-lease the wall spaces to advertisers or others, suffered the loss of permits and future permitting rights, and has been damaged in an amount subject to proof at trial.

## SIXTH CAUSE OF ACTION

### (Violation of Procedural Due Process)

95. Plaintiff refers to and incorporates herein by reference, as fully set forth, each of the other allegations in this Complaint.

96. The City's revocation of Plaintiff's permit approvals impacted Plaintiff in a way that violated its rights to procedural due process protected in Article I, Section 7 of the California

THORSNES BARTOLOTTA MCGUIRE LLP
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363
FAX (619) 236-9653

27

Complaint

Constitution in that:

    (a)    Plaintiff filed an application for, and was approved and issued ministerial permits by the City. The ministerial permit requirements were met, therefore the City was required to issue and deliver the permits to Plaintiff. The City's failure to follow required processes violated Plaintiff's procedural right to due process as protected under Article I, Section 7 of the California Constitution.

    (b)    The City failed to afford Plaintiff the same standards and processes it applies to similarly situated speakers.

    (c)    The refusal of Plaintiff's permit approvals without fair or reasonable opportunity to be heard violated Plaintiff's procedural due process rights.

97.    Plaintiff seeks and desires a declaration and judicial determination that the City's misapplication and enforcement of permit requirements for the Sign Ordinance, and revocation of Plaintiff's permit approvals was unconstitutional under the guarantee of due process in under Article I, Section 7 of the California Constitution.

98.    Plaintiff is informed and believes that the City denies the above contentions. An actual and justiciable controversy has arisen and now exists between the parties concerning the constitutionality of the City's revocation of Plaintiff's permit approvals and misapplication and enforcement of permit requirements. A judicial declaration is necessary and appropriate at this time so that the parties may ascertain their rights, duties and obligations.

99.    Plaintiff faces a credible and imminent threat of City enforcement actions, civil penalties and/or criminal prosecution if Plaintiff proceeds to exercise its state constitutional rights to erect Murals or similar signage on its leased wall spaces.

100.    Plaintiff is informed, believes, and thereon alleges that unless and until restrained by this Court, the City will continue to deny Plaintiff its permit approvals and improperly apply permitting procedures under the Sign Ordinance to deny Plaintiff the issuance of future permits. Plaintiff will be irreparably injured in that it will be deprived of constitutional rights guaranteed under the California Constitution, will continue to suffer substantial loss of rents, profits, and goodwill, and may be subjected to a multiplicity of lawsuits. Plaintiff has no adequate remedy at

THORSNES BARTOLOTTA McGUIRE LLP
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363
FAX (619) 236-9653

28

1    law to prevent or redress this irreparable injury.  If Plaintiff is successful in this action, a significant

2    benefit will be conferred on the general public, and Plaintiff is therefore entitled to reasonable

3    attorney's fees.

4        101.    In performing these acts, the City acted under color of statute, ordinance, regulation

5    and policy of the municipality, in a manner outside constitutional authority and contrary to law.

6        102.    As a direct and proximate result of the conduct alleged herein, Plaintiff has suffered

7    substantial lost revenue, lost profits, and goodwill due to its inability to use or sub-lease the wall

8    spaces to advertisers or others, suffered the loss of permits and future permitting rights, and has been

9    damaged in an amount subject to proof at trial.

10                           **SEVENTH CAUSE OF ACTION**

11          **(Intentional Interference with Prospective Economic Advantage)**

12       103.    Plaintiff refers to and incorporates herein by reference, as fully set forth, each of the

13   other allegations in this Complaint.

14       104.    Plaintiff is in informed and believes, and based thereon alleges that the City

15   intentionally interfered with Plaintiff's prospective economic advantage.  Plaintiff was involved in

16   valid and existing business relationships with its advertising clientele that did and would have

17   continued to result in an economic benefit to Plaintiff.  The City had knowledge or had reason to

18   know of the existence of these relationships.  An economic relationship was evident to the City by

19   virtue of the fact that Plaintiff is a business hired to paint commercial advertisements for its clientele.

20   Plaintiff communicated to the City that its obligations to its clients would be negatively affected if

21   Plaintiff could not continue to operate its business by painting commercial Murals on its leased wall

22   spaces.

23       105.    The City intentionally disrupted the relationship between Plaintiff and its advertising

24   clients by unlawfully revoking permit approvals to effectively remove Plaintiff's existing Murals and

25   prevent Plaintiff from erecting future Murals.  The City had reason to know that by condemning

26   Plaintiff's Murals and prohibiting Plaintiff from erecting additional Murals on behalf of its clients,

27   such actions would disrupt Plaintiff's economic relationships that would have had future benefit to

28   Plaintiff.

THORSNES BARTOLOTTA MCGUIRE LLP
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363
FAX (619) 236-9653

29

Complaint

106.    The City's actions were designed to disrupt, and did disrupt, these relationships, which proximately caused economic harm to Plaintiff.  Plaintiff was forced to destroy the Murals that the advertisers contracted and paid for, negatively affecting its existing agreements and prospective contracts with these advertisers.  Further, the City's actions were wrongful and unlawful independently of the interference itself because it violated Plaintiff's liberty to speech, and equal protection right, among others.

107.    Plaintiff is informed, believes, and thereon alleges that unless and until restrained by this Court, the City will continue to interfere with Plaintiff's business livelihood to prevent Plaintiff from contracting for additional signs on leaseholds already obtained by Plaintiff specifically for the display of Murals.

108.    In performing these acts, the City acted under color of statute, ordinance, regulation and policy of the municipality, in a manner outside constitutional authority and contrary to law.

109.    As a direct and proximate result of the conduct alleged herein, Plaintiff has suffered substantial lost revenue, lost profits, and goodwill due to its inability to use or sub-lease the wall spaces to advertisers or others, suffered the loss of permits and future permitting rights, and has been damaged in an amount subject to proof at trial.

## IV.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

On the First Cause of Action:

1.    For a judicial declaration that the Sign Ordinance is invalid and unconstitutional as applied to Plaintiff and that sections 142.1210(a)(1) and 142.1210(a)(3) of the Sign Ordinance are invalid and unconstitutional on their face because they violate the right to liberty of speech and expression secured by Article I, Section 2 of the California Constitution.

2.    For a preliminary and permanent injunction restraining the City and its agents, officers and employees, and all persons acting in concert with it, from enforcing the above challenged provisions of the City's sign regulations, from impermissibly, illegally, and/or unconstitutionally restricting Plaintiff's ability to engage in protected speech by installing off-site or

THORSNES BARTOLOTTA McGUIRE LLP
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363
FAX (619) 236-9653

1064064v1

Complaint

1    on-site Murals on its leased properties or elsewhere, and from threatening or attempting to coerce the

2    removal of, or interfering with the placement or enjoyment of, the above described Murals.

3        3.     Attorney's fees in accordance with section 1021.5 of the California Code of Civil

4    Procedure.  Consequential damages, general damages, lost profits, or other special damages in an

5    amount according to proof at trial.

6    <u>On the Second Cause of Action:</u>

7        1.     For a judicial declaration that the Sign Ordinance is invalid and unconstitutional as

8    applied to Plaintiff and that sections 142.1210(a)(1) and 142.1210(a)(3) of the Sign Ordinance are

9    invalid and unconstitutional on their face because they violate the right to free commercial speech as

10   secured by the right to liberty of speech in Article I, Section 2 of the California Constitution.

11       2.     For a preliminary and permanent injunction restraining the City and its agents,

12   officers and employees, and all persons acting in concert with it, from enforcing the above

13   challenged provisions of the City's sign regulations, from impermissibly, illegally, and/or

14   unconstitutionally restricting Plaintiff's ability to engage in protected speech by installing off-site or

15   on-site Murals on its leased properties or elsewhere, and from threatening or attempting to coerce the

16   removal of, or interfering with the placement or enjoyment of, the above described Murals.

17       3.     Attorney's fees in accordance with section 1021.5 of the California Code of Civil

18   Procedure.  Consequential damages, general damages, lost profits, or other special damages in an

19   amount according to proof at trial.

20   <u>On the Third Cause of Action:</u>

21       1.     For a judicial declaration that the Sign Ordinance is invalid and unconstitutional as

22   applied to Plaintiff and that sections 142.1210(a)(1) and 142.1210(a)(3) of the Sign Ordinance are

23   invalid and unconstitutional on their face because they violate the right to equal protection secured

24   by Article I, Section 7 of the California Constitution.

25       2.     For a preliminary and permanent injunction restraining the City and its agents,

26   officers and employees, and all persons acting in concert with it, from acting with unbridled

27   discretion to enforce the above challenged provisions of the City's sign regulations to the effect of

28   impermissibly, illegally, and/or unconstitutionally restricting Plaintiff's ability to engage in protected

THORSNES BARTOLOTTA MCGUIRE LLP
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363
FAX (619) 236-9653

31

1   speech afforded to other similarly situated speakers.

2      3.      Attorney's fees in accordance with section 1021.5 of the California Code of Civil

3   Procedure.

4   <u>On the Fourth Cause of Action:</u>

5      1.      For a judicial declaration that the City's actions constituted a taking without just

6   compensation as prohibited by Article I, Section 19 of the California Constitution.

7      2.      For a preliminary and permanent injunction restraining the City and its agents,

8   officers and employees, and all persons acting in concert with it, from unfairly and unreasonably

9   applying its sign regulations to Plaintiff in a way that condemns and deprives Plaintiff of the use and

10   value of its property rights in its leased wall spaces.

11      3.      Consequential damages, general damages, lost profits, or other special damages in an

12   amount according to proof at trial.

13   <u>On the Fifth Cause of Action:</u>

14      1.      For a judicial declaration that the City's actions in revoking Plaintiff's permit

15   approvals, and application of unfair and unreasonable processes and double standards to Plaintiff,

16   violated Plaintiff's substantive right to due process as secured by Article I, Section 7 of the

17   California Constitution.

18      2.      For a preliminary and permanent injunction restraining the City and its agents,

19   officers and employees, and all persons acting in concert with it, from impermissibly, illegally,

20   and/or unconstitutionally denying Plaintiff's Mural permit approvals, and from applying unfair and

21   arbitrary processes to Plaintiff to effectively deprive Plaintiff of its right to substantive due process.

22      3.      Attorney's fees in accordance with section 1021.5 of the California Code of Civil

23   Procedure.

24   <u>On the Sixth Cause of Action:</u>

25      1.      For a judicial declaration that the City's actions in revoking Plaintiff's ministerial

26   permit approvals, and application of unfair and unreasonable processes and double standards to

27   Plaintiff, violated Plaintiffs rights to procedural due process as secured by Article I, Section 7 of the

28   California Constitution.

THORSNES BARTOLOTTA MCGUIRE LLP
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363
FAX (619) 236-9653

32

1064064v1

Complaint

2.      For a preliminary and permanent injunction restraining the City and its agents, officers and employees, and all persons acting in concert with it, from refusing Plaintiff the approval and issuance of legally satisfied ministerial permits, to effectively deprive Plaintiff of its right to procedural due process.

3.      Attorney's fees in accordance with section 1021.5 of the California Code of Civil Procedure.

On the Seventh Cause of Action:

1.      Consequential damages, general damages, lost profits, or other special damages in an amount according to proof at trial.

On All Causes of Action:

1.      For Plaintiff's costs of suit; and

2.      Such other relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial on all issues of which it is permitted by law.

Dated: December 11, 2013

THORSNES BARTOLOTTA McGUIRE LLP

By:

VINCENT J. BARTOLOTTA, JR.
KAREN R. FROSTROM
JARRETT S. CHARO
Attorneys for Plaintiff, ArchitecureArt LLC.

THORSNES BARTOLOTTA MCGUIRE LLP
2550 Fifth Avenue, 11th Floor
San Diego, California 92103
(619) 236-9363
FAX (619) 236-9653

33

1064064v1

Complaint